## M. ALLEN v. THE STATE.

### No. 3551. Decided May 19, 1915.

**1.—Assault to Rape—Sufficiency of the Evidence.**

Where, upon trial of assault with intent to rape, the evidence was sufficient to sustain the conviction, there was no error. Following Washington v. State, 51 Texas Crim. Rep., 543, and other cases.

**2.—Same—Intent—Sufficiency of the Evidence.**

Where, upon trial of assault with intent to rape, the only intent defendant had, as shown by the evidence, when he assaulted the prosecutrix, was to rape her, the same was sufficient to sustain a conviction.

Appeal from the District Court of Galveston. Tried below before the Hon. Clay S. Briggs.

Appeal from a conviction of assault with intent to rape; penalty, fifty years imprisonment in the penitentiary.

*Aubrey Fuller,* for appellant.—On question of insufficiency of the

evidence: Dyner v. State, 46 Texas Crim. Rep., 402; Caddell v. State, 44 id., 213; Warren v. State, 51 id., 598; Taylor v. State, 18 Texas Crim. App., 489.

*C. C. McDonald,* Assistant Attorney General, and *Chas. H. Theobald, N. J. Levy,* and *Walter E. Cranford,* for the State.—On question of sufficiency of the evidence: Washington v. State, 51 Texas Crim. Rep., 542, and cases cited in opinion.

PRENDERGAST, Presiding Judge.—From a conviction of an assault with intent to rape with a penalty of fifty years confinement in the penitentiary assessed this appeal is prosecuted.

Appellant contends that the evidence is insufficient to justify the jury to find him guilty of the offense they did, and that the court erred in submitting that offense to the jury, he claiming that he was guilty of no offense higher than aggravated assault.

The facts are undisputed. There is no question as to the identity of the appellant as the party who committed the assault. Appellant testified and claimed that he was drunk on the occasion, and he did not know what he said and did, if anything.

The assaulted party was a young white woman who worked for the telephone company in the City of Galveston. She lived with her mother and young sister some distance from the telephone office. Just about 9 o'clock Christmas night of 1914 she telephoned to her mother and sister that she was starting home, and told them the car line she would go on. Her mother and sister thus apprised were expecting her arrival. The appellant was a negro man. The assaulted woman testified that she went to a certain location, on the street car, nearest her home, got off the car and started to her mother's, telling the streets where she alighted and along which she had to walk. After getting off of the car and starting home, she said: "I walked north on the west side of the street, and this Monroe Allen was on the corner, and as I approached him I noticed he had his clothes unfastened and his person exposed. Of course it kind of frightened me. I was going to my mother's at 817 Thirty-second Street, and I tried to walk around him as he was coming towards me. He was standing just on the corner and he was looking direct at me. I never said anything. He just made the remarks to me, 'Here is a nice big prick for you,' and grabbed for me. After he said that he just grabbed at me and coming towards me caught the end of my coat. He got hold of my coat; he just caught the end of it, and I jerked and ran from him. How I got away from him, I jerked away; I was watching him all the time. By my pulling I got away from him, of course,—by the pulling away." She then shows that she ran to her mother's very greatly frightened. Her mother and sister heard her coming, opened the door and let her in. She informed them of the assault upon her. Two men were not far distant on the street and her mother and sister watched the appellant, called these men, told them of the assault and had them arrest and

hold the appellant until the officers arrived, which they did very quickly afterwards. The young assaulted woman's testimony was corroborated by that of her mother and sister and one of the men who seized the appellant and held him till the officers arrived.

In our opinion the evidence was amply sufficient to sustain the verdict, and the court did not err in submitting the question to the jury for a finding.

The court gave a very full, complete and apt charge, guarding and safeguarding appellant's rights in every particular. Appellant makes no complaint of the court's charge whatever as failing in any of these respects. The sole complaint of it is that the court submitted the offense of assault with intent to rape, as stated.

The case of Washington v. State, 51 Texas Crim. Rep., 542, was quite similar to this. In that case, both on the original hearing and motion for rehearing, it was contended that the evidence was insufficient to show that appellant was guilty of an assault with intent to rape of which he was found. Judge Henderson says: "A summary of the facts show that the assaulted party in that case was a young white girl about seventeen years old, who lived at Houston Heights, a suburb of the City of Houston; that on the occasion in question, March 7, 1907, late in the evening, she took a car to her home, some two or three miles distant. After alighting from the car she had several blocks to walk before getting to her home; night had set in and it was quite dark. When about a block short of her home, just as she turned the corner of the street near the cotton mill, someone came up and took hold of her arm; she at first thought it was some friend, but immediately turned and saw that it was not, and began to scream. Appellant therein grabbed hold of her, and told her not to make a noise and then began to beat and choke her, knocked her down twice, she in the meantime screaming. Persons ran up and her assailant fled." It was also contended in that case that the evidence did not authorize the jury to believe that his intent was to rape her, but equally tended to show that he intended to rob her. Judge Henderson said: "We do not agree with this contention. The evidence shows that appellant seized hold of the prosecutrix; made no demand on her to surrender her property; he knew she was a woman, and there is no testimony tending to show that he had any reason to believe she had valuables; she attempted to scream, and he merely told her to hush, and then persisted in choking her down, evidently to make her hush; if he had wanted to take her valuables he had ample opportunity to do so. If appellant had any other purpose than to have carnal intercourse with prosecutrix there is no manifestation of it in this record, and the circumstances furnished him ample opportunity to have taken her pocketbook, which was in her hand at the time of the assault, or to have taken her breastpin from her neck if he had so desired. His setting upon a young girl in the nighttime, under the circumstances, and his violence, and when she attempted to scream, telling her to hush, would strongly indicate his intent. In our opinion the facts are amply sufficient to show his pur-

pose, and but for the fact of her screams, and of assistance rushing to her rescue, he would, no doubt, have accomplished his design."

In Taff v. State, 69 Texas Crim. Rep., 528, it was shown that the assaulted girl, a white woman, in that case was living with her mother. On the night of the assault, she testified, someone appeared at their home and knocked at the door, and then tried to push the door open; when she would not admit him, he left, but shortly returned and went to the window, and asked her to come out, offering her from five to ten dollars to do so. She asked him to leave, and he agreed to do so if she would give him some bread and butter, which she did. He left, but again came back and asked for water, and when she gave it to him, and he drank it he undertook to raise the window; as he did so she endeavored to prevent the window being raised, when appellant caught her by the wrist and pulled her towards him. She then discovered, for the first time, that her assailant was a negro, when she screamed, jerking away from him. He left, and shortly after she screamed some men came, when she told them what had occurred. In that case the appellant therein contended that that evidence was insufficient to show an assault with intent to rape. This court held otherwise. See also Ross v. State, 60 Texas Crim. Rep., 547; White v. State, 60 Texas Crim. Rep., 559; Stewart v. State, 61 Texas Crim. Rep., 90.

We think it unnecessary to discuss the evidence in this case. There can be no doubt but that the only intent appellant had when he assaulted the young woman in this case was to rape her. What he said, what he did and the exposure of his person would indicate nothing else. The judgment is affirmed.

*Affirmed.*