[Civ. No. 5283.    First Appellate District, Division Two.—January 15, 1926.]

JOSEPHINE MALACHOWSKI, Administratrix, etc., Respondent, v. H. A. VARRO, etc., Defendant; CALIFORNIA HIGHWAY INDEMNITY EXCHANGE (an Association), Defendant and Appellant.

[1] NEGLIGENCE—ACTION FOR DAMAGES FOR DEATH—INSURANCE—INDEMNITY BOND — CONSTRUCTION. — In this action by the administratrix of the estate of a deceased person against the owner of an automobile bus and the latter's insurance carrier for damages for the death of plaintiff's intestate resulting from being struck by said automobile bus, the insurance contract, taken by its four corners, is an indemnity bond.

[2] ID.—BOND GIVEN PURSUANT TO ORDINANCE—PROVISIONS OF ORDINANCE PART OF BOND.—In such action, where the bond was given pursuant to the provisions of a city ordinance which required the owner of an automobile for hire to file with a certain municipal board a bond in such form as the said board might deem proper, the provisions of the ordinance became a part of the bond to the same extent as though the ordinance were incorporated in the bond.

[3] ID.—CONTRACTS—ATTACHED INDORSEMENT—CONSTRUCTION.—In such action, where a document marked "Endorsement," which on its face stated that it was a separate paper, was attached to the policy, the court is required to give force and effect to that document over and above the provisions contained in the other document to which it was attached.

[4] ID.—PARTIES—JOINDER OF INSURANCE CARRIER—SERVICE—TRIAL.—
In such action, where the bond or policy issued by the insurance
carrier to the owner of the automobile bus provided that the policy
"shall inure to and be for the benefit and protection of anyone
who shall sustain any damage or injury," the plaintiff was entitled
to maintain the action directly against the insurance carrier;
and the fact that the owner of the automobile bus was not served
and did not appear at the trial did not operate retroactively so as
to create an infirmity in the procedure at the time of the trial
when there was no infirmity at the time process was served on the
insurance carrier.

[5] ID.—AUTOMOBILE COVERED BY POLICY—EVIDENCE.—In such action
it was sufficiently shown that the bond or policy in suit covered the
automobile that struck the deceased.

[6] ID.—CONTRIBUTORY NEGLIGENCE—EVIDENCE.—In such action, it can-
not be held as a matter of law that there was no evidence of negli-
gence in the operation of the automobile bus nor that the decedent
was guilty of contributory negligence.

---

(1) 36 **C. J.**, p. 1084, n. 74.   (2) 36 **C. J.**, p. 1062, n. 3.   (3) 36
**C. J.**, p. 1061, n. 2.   (4) 33 **C. J.**, p. 805, n. 91 New; 36 **C. J.**,
p. 1132, n. 12.   (5) 3 **C. J.**, p. 727, n. 98.   (6) 4 **C. J.**, p. 776, n. 57;
28 Cyc., p. 49, n. 46, 47.

APPEAL from a judgment of the Superior Court of Los
Angeles County.   Albert Lee Stephens, Judge.   Affirmed.

The facts are stated in the opinion of the court.

B. P. Gibbs and W. I. Gilbert for Appellant.

E. B. Drake for Respondent.

STURTEVANT, J.—Bruno Malachowski was killed by be-
ing struck by an automobile bus.   Later his widow took out
letters of administration and thereafter she filed a complaint
as such administratrix against H. A. Varro, doing business
as Liberty Stage Line, and as the owner of the automobile
bus, and she joined as a defendant California Highway In-
demnity Exchange, a corporation.   Service of process was
not made on the owner, but it was made on California High-
way Indemnity Exchange, a corporation, and it appeared
and answered.   In drawing her complaint the plaintiff
pleaded a cause of action for personal injuries following the

procedure in *Stein* v. *United Railroads,* 159 Cal. 368 [113 Pac. 663]. In addition thereto the plaintiff pleaded that on August 3, 1920, by its policy the said California Highway Indemnity Exchange agreed to indemnify the defendant H. A. Varro for any loss or damage caused by the operation of the autobus, and that said policy provided that it should inure to and be for the benefit and protection of the plaintiff. In its answer the defendant inserted several denials and in addition thereto pleaded the contributory negligence of the deceased. A trial was had before the trial court sitting without a jury. The trial court made findings in favor of the plaintiff and from a judgment entered thereon the California Highway Indemnity Exchange has appealed. The appellant makes several points and we will take them up in the order stated in the appellant's brief.

In several different issues the appellant makes the contention that the respondent was not entitled, at least before judgment had, to maintain an action against the appellant. In this behalf the appellant asserts that it was neither alleged, found, nor proved that the appellant or its agent owned or operated the bus or that the appellant was guilty of any negligence. The respondent replies that her action is *ex contractu* and that by reason of the terms of the policy and by reason of the terms of the ordinance requiring the execution of the policy, the respondent was entitled to adopt the procedure which she followed.

Ordinance No. 40502 (N. S.) (approved June 30, 1920) of the council of the city of Los Angeles regulates the use of motor-cars for the transportation of passengers for hire. By section 1 certain words are defined. By section 2 it is made unlawful for any person to engage in the business of operating an automobile for hire without first obtaining a permit in writing from the board of public utilities so to do. Section 5 provides: "Before any of the permits herein provided for are issued, the Board shall require the owner of every automobile for hire . . . to file with the Board and thereafter keep in full force and effect a bond or policy of insurance in such form as said Board may deem proper, and executed by a surety or sureties approved by said Board, insuring the public against any loss or damage that may result to any person or property from the operation of such vehicle

. . . provided the maximum amount of recovery in such bond or policy of insurance specified shall not be less than the following sums, to-wit: For the injury or death of one person, $5000; . . . "

On March 31, 1921, there was filed with the board of public utilities, Los Angeles, an indenture in writing which contained provisions as follows:

" . . . (a) Against loss from common law or statutory liability for damages on account of bodily injuries, fatal or non-fatal, accidentally suffered (or alleged to have been suffered) while this contract is in force, by any person or persons, not in the employ of the subscriber, resulting directly from the ownership, use or maintenance of any automobile described in the schedule herein contained. This contract shall cover such injuries so sustained wherever any automobile covered hereby may be in the service of the subscriber. The exchange's liability is limited to five thousand dollars ($5,000.00) for injury to or death of any one person, and, subject to the same limit for each person, the exchange's total liability for injury to or death of more than one person in any one accident is limited to ten thousand dollars ($10,000.00). . . .

" . . . (g) The foregoing special agreements are made subject to the general agreements which shall be construed as conditions.

"Schedule of Warranties, Contract No. 1046. . . .

"Name of subscriber, H. A. Varro, d.b.a. Liberty Stage Line. Business, auto stages. . . .

"The automobiles covered hereunder are described as follows: . . . Number, 24361. State License No. 263–597. . . .

"Endorsement.

"Date, August 1st, 1920.

"It is hereby understood and agreed that notwithstanding expressions inconsistent with or contrary thereto in this policy contained, this policy is specifically issued to cover a passenger-carrying automobile, jitney bus or motor bus. This policy shall inure to and be for the benefit and protection of anyone who shall sustain any damage or injury, or to the heirs, personal representatives, administrators, executors or assigns of any such person who may be so damaged or injured or suffer death by reason of negligence on the part of

the driver or operator of the autombile or so-called jitney bus or motor bus, or from the defective construction thereof when such jitney bus or motor bus and the driver or operator of the same are duly licensed, have permit issued by authority of the Board of Public Utilities, Los Angeles, California. . . .

"It is further understood and agreed that in the event a final judgment covering any loss or claim under this policy is rendered against the assured, the Exchange guarantees the payment of said judgment direct to the plaintiff securing such judgment, irrespective of the financial responsibility or any act or omission on the part of the assured, provided that any action by the said plaintiff to recover under this clause is commenced within twelve months next after such final judgment shall have been rendered, or where such limitation of time is prohibited by the laws of the state wherein this policy is issued, then and in that event no suit or action shall be sustainable unless commenced within the shortest limitation permitted under the laws of such state. The Exchange does not prejudice by this condition any defense against such loss or claim that it may be entitled to make under this policy, nor shall anything herein be construed to alter or waive any of the provisions of the general agreements of this policy in so far as they relate to any action brought against the Exchange by the assured. . . .

"Attached to and forming a part (when countersigned and dated by an authorized agent) of policy No. 1046 issued by the California Highway Indemnity Exchange, Los Angeles, California, to H. A. Varro d.b.a. Liberty Stage Line, of Downey, California.

"Countersigned this 3rd day of August, 1920."

---

" . . . This Contract Subject to the following General Agreements: . . .

"(13) No action shall lie against the *attorney* or any subscriber at the Exchange, to recover for any loss under this contract, unless brought by the subscriber himself, nor *to recover* for any loss arising under clauses (a) or (c) of the special agreements unless brought by the subscriber himself to recover for moneys actually paid by him in satisfaction of a judgment after trial of the issue in a suit instituted within

the period limited by the statute of limitations, and in no event shall any action lie unless brought within ninety days after the right of action accrues as herein provided; provided, however, that the insolvency or bankruptcy of the subscriber shall not release the Exchange from the payment of damages (to a person not a party to this contract) for injury sustained or loss occasioned during the life of this contract, and in case execution against the subscriber is returned unsatisfied in whole or in part in an action brought by the injured, or his or her representative in case death result from the accident, because of such insolvency or bankruptcy, or because sufficient property of the judgment debtor cannot be found to satisfy such execution, then an action may be maintained by the injured person, or his or her personal representative, against the Exchange, subject to and under the terms of this contract for the amount of the judgment recovered in such action not exceeding the amount herein limited or the amount. that the subscriber might have recovered against the Exchange under this contract, in the event the judgment had been fully satisfied against him.

" . . . In witness whereof, the subscribers at California Highway Indemnity Exchange have caused this policy to be issued by their attorney.

"Countersigned at Los Angeles, California, this 3rd day of August, 1920. . . . " (Duly executed.)

"Endorsement.

"Effective March 15th, 1921.

"It is hereby understood and agreed that the 1921 state license numbers of the Reo cars covered under this policy are as follows:

Motor No. 24361 1921 St. Lic. 233–688
"       "    30961  "    "    "   233–690

in lieu of St. license numbers 263–597 and 263–688 respectively, as originally written under item (N) of the schedule of warranties of this policy.

"In all other respects the terms, limits and conditions of this policy remain unchanged.

"Attached to and forming a part (when countersigned and dated by an authorized agent) of policy No. 1046 issued by the California Highway Indemnity Exchange, Los Angeles, California, to H. A. Varro, d.b.a. Liberty Stage Line of Downey, California."

[1]  Taking up the contract by its four corners it is quite clear that it is an indemnity bond. (*Somers* v. *United States F. & G. Co.,* 191 Cal. 542, 547 [217 Pac. 746].)

[2]  The record discloses without any contradiction that the bond was given pursuant to the provisions of the ordinance approved June 30, 1920, of the council of the city of Los Angeles.  That being so, the provisions of the ordinance became a part of the bond to the same extent as though the ordinance were incorporated in the bond. (*Town of Mill Valley* v. *Massachusetts Bonding & Ins. Co.,* 68 Cal. App. 372 [229 Pac. 891]; *Milliron* v. *Dittman,* 180 Cal. 443, 445 [181 Pac. 779].)

[3]  The document marked "Endorsement" states on its face that it is a separate paper, attached to the policy and effective when countersigned, etc.  In this litigation the courts are required to give force and effect to that paper over and above the provisions contained in the other document to which it was attached. (Civ. Code, sec. 1651.)

[4]  Specially examining that rider it is clear that it contemplated two different procedures.  It provided that the policy "shall inure to and be for the benefit and protection of anyone who shall sustain any damage or injury . . . " "To inure" is a very broad expression meaning to devolve upon. (Century Dictionary; Bouvier's Law Dictionary.) It is also clear that under the terms of the policy it was contemplated that claimants might maintain an action against the assured, and, having obtained judgment, such persons could thereafter maintain an action on such judgment against the appellant.  Acting under the theory first stated, it was held in an action involving a contract very similar in terms that the insurance company could be joined as a party defendant with the assured. (*Gugliemetti* v. *Graham,* 50 Cal. App. 268, 270 [195 Pac. 64].)  The contract involved in *Milliron* v. *Dittman, supra,* was not so closely similar, nevertheless the same ruling was made.  This respondent followed that practice.  The fact that the owner was not served and did not appear at the trial did not operate retroactively so as to create an infirmity in the procedure at the time of the trial when there was no infirmity at the time process was served on the appellant. Under the provisions of the contract executed by the appellant and the owner we think that the plaintiff was entitled to maintain an action directly against the appellant.

[5]    The original policy covered an automobile No. 24361 having a state license number 263–597. There was some evidence that the automobile which struck the deceased bore the state license number 233–688. The appellant thereupon argues that the policy under which the respondent sought to recover did not cover injuries caused by the automobile that struck the deceased. The original policy was dated the third day of August, 1920. It covered an automobile number 24361 having a state license number 263–597. By the terms of the statute then in force the state license would expire January 31, 1921, and a new license must thereupon have been procured. The bus that was involved in the accident bore license number 233–688. An indorsement dated March 15, 1921, attached to the policy and signed by the appellant, contained the following: "It is hereby understood and agreed that the 1921 state license numbers of the Reo cars covered under this policy are as follows: Motor No. 24361 1921 St. Lic. 233–688 . . . in lieu of St. Lic. No. 263–597." Moreover, in paragraph 4 of her complaint the plaintiff alleged that the state license number of the bus involved was 233–688. The appellant did not deny the allegation. At the trial, before any evidence was taken, the trial court inquired as to what were the issues. Speaking of the paragraphs of the complaint, "The Court: Just a moment. Four? Mr. Gilbert: Four is denied. Mr. Drake: Only as to the negligence; the negligence is denied." It thus appears that the allegation as to the state license number of the automobile involved in the accident was not in issue.

[6]    The appellant contends that there was no negligence in operating the automobile bus. It cites some of the record to support the contention. The respondent replies that there was evidence showing negligence. A most cursory examination of the record discloses that the most that can be said in behalf of the appellant is that the evidence was conflicting. The accident occurred in the city of Los Angeles on the night of the 13th of February, 1921. The decedent, his wife, and their children had made a call in one of the outlying districts. Some time after dark in the company of their host they went to the intersection of Stephenson Avenue and Bonnie Beach Street to take a street-car going west. Some of the witnesses stated that it had been raining.

Other witnesses stated that it had not been raining, but that it was foggy. The intending passengers reached the north-east corner of the intersection of the streets above named. Later a street-car approached from the east and the decedent went out into the street to stop the car. His host, Mr. Natuski, went with him. The rest of the group did not go, or if they attempted to go returned to the corner. Mr. Natuski stated that he saw the street-car approaching from the east and that he saw the automobile bus approaching from the west. They were on the north side of the street-car track. There is no evidence in the record that there were any other vehicles in that portion of the street at the time that the accident occurred. The motorman on the street-car saw the bus coming in the opposite direction and also saw the persons assembled at the crossing. He testified that two were standing right out and four or five women coming out. That the two men he saw standing out in the street were between three and four feet from the north-bound rail of the car track; north from it—just about straight out where the car would have stopped. When he first saw the autobus the witness was seventy-five or eighty feet from his stopping place. The autobus was traveling near the center of the street between the north rail and the curb. There was a light on Bonnie Beach in the intersection. When the bus got in about twenty-five or thirty feet it swung toward the south—toward the north rail of the car track. Just as it got right down in front the bus hit the deceased—hit him, and the other fellow, to save himself, jumped right out in front of the witness' car within a foot of the north rail. The motorman made an emergency stop to keep from hitting him. After the bus struck the man it swerved back in toward the center of the street. Before the accident the deceased moved a little closer to the car. He moved from the position he was in toward the track. He did not move back out in the line of the machine; he moved the other way. Some witnesses testified that the autobus approached the spot traveling "very fast"—others said it was traveling twelve to fourteen miles an hour. Several witnesses testified that no whistle or horn was sounded. If the trial court believed the foregoing testimony, and in support of its findings we must assume that it did, it cannot be held as a matter of law

that there was no evidence of negligence nor that the decedent was guilty of contributory negligence.

We find no error in the record. The judgment is affirmed.

Langdon, P. J., and Nourse, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on March 15, 1926.